No. 7905.

## PARKER v. SIPLE, ADM'R.

DECEDENTS' ESTATES.—*Statute of Limitations.—Pleading.—Evidence.*—
Evidence, to sustain the defence of the statute of limitations to claims
against decedents' estates, is admissible without plea.
CONTRACT.—*Real Estate.—Right of Action.—Statute of Frauds.*—A. sold
land to B., B. agreeing to pay to A. any excess over the purchase price
for which he might sell the land within five years. B. sold the land,
on credit, within the five years, at an excess over the purchase price.
*Held,* that A.'s right of action for such excess did not accrue at the date
of the sale by B., nor until the latter had been fully reimbursed for the
amount of purchase-money paid by him, unless he negligently or un-
necessarily postponed the payment for the land.
*Held,* also, that such a contract is not within the statute of frauds.

From the Pike Circuit Court.

*E. A. Ely, C. H. Burton, J. L. McMaster* and *A. Boice,*
for appellant.

*F. B. Posey* and —— *Wilson,* for appellee.

FRANKLIN, C.—Appellant filed a claim against appellee,
as administrator of the estate of James Chadwick, deceased,
in the Pike Circuit Court, February 11th, 1878. The claim
was refused to be admitted by the administrator, and went
upon the issue docket at the October term, 1878. The ad-
ministrator appeared and demurred to the complaint, which
demurrer was overruled. No other pleadings filed in the
cause; trial by the court; finding for appellee; motion for
a new trial overruled and excepted to, and judgment on the
finding.

The only assignment of error in this court is the overrul-
ing of the motion for a new trial. The reasons assigned in
the motion are, that the finding was not sustained by the evi-
dence, was contrary to the evidence and contrary to the law.
Under these reasons three questions are presented by coun-
sel: 1st. Was the claim proven? 2d. Was it barred by
the statute of limitations? 3d. Was it within the statute
of frauds?

It is agreed by the parties, that, on the 18th day of October, 1867, appellant sold to the deceased a farm in Hendricks county, Indiana, for the sum of $4,800, at the rate of $40 per acre; that a deed for the same was then executed, and that amount settled between them by appellant taking a tract of land in Iowa, at $3,500, and $1,300 in notes on persons in Iowa, near the Iowa land conveyed to appellant; that deceased sold the Hendricks county land on the 19th day of September, 1870, to Martha Edwards for the sum of $5,400. And appellant claims that it was also a part of the agreement and contract between the parties, that, if the deceased should, within five years thereafter, sell the Hendricks county farm for more than $40 per acre, he should pay the excess, whatever he should get, to appellant.

The proof was all written, and in the shape of depositions of witnesses and documentary evidence. Chadwick had moved to Pike county and died there. At the time Chadwick sold the Hendricks county land to Martha Edwards, he gave a bond for a deed. On the 12th day of March, 1872, he conveyed the land to Mrs. Edwards and her assignees, and received $1,800 of the consideration money; that the last of the consideration, to wit, $300, was received by Chadwick in 1876. The evidence, uncontradicted, shows clearly that the plaintiff's claim was embraced in, and was a part of, the contract for the sale and exchange of the Hendricks county farm; that, in the negotiations, appellant asked $45 per acre, and deceased offered him $40 per acre. But they finally agreed that deceased should pay then $40 per acre, and that, if he could sell the land for more than $40 per acre, at any time within five years, he would pay to appellant such excess.

The only testimony in the case, that has been suggested as not explicit upon this question, is that contained in the deposition of Robert P. Parker, which reads as follows: "I had a conversation with James Chadwick, in his lifetime, in the

fall of 1870, in regard to the farm he had bought from the plaintiff; heard Chadwick say then that he had nothing else to do with the $5,400 he had got for the land he had bought from the plaintiff, but to loan it, with the exception, perhaps, that the plaintiff had a claim upon him, Chadwick, for $5 per acre, and that he hardly thought, under the circumstances, he ought to demand it. Chadwick further said that, by the terms of the trade between him and the plaintiff, in regard to the land he had bought of the plaintiff, the plaintiff was to have $5 more, extra, per acre, if he, Chadwick, could sell it for that." We do not think this testimony is the least uncertain, or in conflict with appellant's claim.

It is insisted by appellee's counsel that the testimony contained in the deposition of William Carter, of Wayne county, State of Iowa, tends to prove payment of the claim. Appellant moved onto the Iowa land which he got of deceased in the fall of 1867; lived there, within five miles of witness' residence, one year; then moved to the State of Kansas, where he resided some eight years, when he returned to Hendricks county, Indiana. Carter in his deposition testifies as to what took place in 1867 and 1868, the year appellant was in Iowa. Omitting the questions, the answers in the deposition read as follows: "I did not hear any land trade made at all; I paid money; it was boot-money, as I understood it, between farms which they traded; I do not recollect exactly, but it must have been in 1865 or 1866, or somewhere about then; I was authorized by Chadwick to pay Henry R. Parker fifteen hundred dollars for him, Chadwick, as he agreed to give Parker that much to boot between the farms in Indiana and the farm down here in Appanoose county, Iowa; the time stated is not right, I know; I was agent for Chadwick in paying the money; I was collecting Chadwick's money here, and attending to his business, and he authorized me to pay it here to Parker, instead of sending it to

Chadwick, who was then in Indiana; part of it was paid at Parker's house, in Appanoose county, and part of it at my own house, in Wayne county; it was paid in payments as I collected Chadwick's money; I don't remember how many payments were made; the size of the payments run from one hundred to three hundred dollars, and perhaps five hundred dollars, at one time, especially; I know I took receipts from Parker for the money I paid him; I remember that at one time we added the amount of the small receipts together, and I took one from him at that time for all the money I had paid him at former times, and destroyed the small receipts by tearing them up; at that time they aggregated somewhere between eight hundred and one thousand dollars; I paid him altogether fifteen hundred dollars, the sum Chadwick authorized me to pay him; Parker lived in Indiana (at the time of the trade); I saw Parker, I think, at least once every ten days while he lived here; he never claimed afterward that Chadwick owed him any more on the land; he said their contract was that Uncle Jim, meaning Chadwick, who was his uncle, agreed that he should be paid, in payments as I could collect it for Chadwick, just as Chadwick had written to me; he came to my house when he first moved, for the money, and I told him I did not have that much on hand for Chadwick, and he said he was not in need of the money, and it was to be paid in payments as before stated; he said nothing about Chadwick's putting the land on the market; the amount I paid him was all I ever heard claimed; if there was anything more, neither party ever mentioned it in my presence; knew of no other facts material in the case."

The testimony in this deposition states nothing about the terms of the contract, further than the paying of the boot-money that was then due. Neither does it tend to show a payment of appellant's subsequent claim for the excess in the subsequent sale of the land. At that time appellant had

no such absolute claim. Chadwick had not yet sold the land, and until that was sold for more than $40 per acre, there could be no claim for the excess. Chadwick did not direct his agent (Carter) to pay it, and appellant did not, to him, claim it. The only apparent conflict that we see is in the amount that Carter states he paid to appellant out of the claims in his hands for collection for Chadwick. We think the substance of that is, that the notes which appellant got of Chadwick as a part of the consideration for the Hendricks county farm, at $40 per acre, were at the time in the hands of Chadwick's agent (Carter) in Iowa; that Carter collected them, principal and interest, and paid the money over to appellant, and thus closed up that transaction. And that whole matter has nothing to do with appellant's subsequent claim, herein sued upon. We think the testimony fully proved appellant's claim. There was no testimony in conflict with it, and none tending to show that it had been paid.

The next question presented is, was the claim barred by the statute of limitations? Counsel have discussed this question at considerable length. Appellant in his brief informs us that that was the question upon which the court below found in favor of appellee. And appellee, in his brief, says: "That the court (below) committed no error in holding that appellant's claim was barred by the statute of limitations."

According to the decision of this court, in the case of *Niblack* v. *Goodman*, 67 Ind. 174, (see opinion on petition for a rehearing,) the sixty-sixth section of 2 R. S. 1852, p. 261, was the only law in force at the time of the trial, upon the subject of defendants having the benefit of the statute of limitations, without pleading it, to claims filed against estates. And under that the evidence was admissible without pleading the statute.

Then, under the evidence, was the claim barred by the

Parker *v*. Siple, Adm'r. ,

statute of limitations? The land was sold on the 19th day of September, 1870. This claim was filed on the 11th day of February, 1878. The evidence nowhere shows the date of the death of Chadwick. We can not tell from the evidence, whether the statute of six years after the sale of the land had expired before the death of deceased, or whether the eighteen months extension of the statute from the date of his death, expired before or after the filing of the claim ; they could not both have occurred. And, unless the proof showed that the statute had expired before his death, there was a failure of proof to bring the claim within the statute of limitations, considering appellant's right of action to have accrued at the date of the sale of the land.

But we do not think the right of action did then accrue. According to the testimony contained in the appellant's deposition, which was directed by the court to be read, after the parties had closed their regular evidence, he told deceased at the time of the trade, that, by giving reasonable credits, the land could be sold for $45 per acre. The parties doubtless understood that the land would be likely sold upon reasonable credits, for at least a part of the consideration money, and that appellant was to receive his excess, if any, after the deceased had been fully reimbursed for what he had paid for the land.

The evidence shows that the land was paid for as follows : In January, 1871, $1,800 ; September, 1871, $1,500 ; February or March, 1872, $1,800 ; January, 1876, $300. We think it would be an unreasonable construction of the contract, and contrary to the understanding of the parties, to determine that appellant was to receive his $600 of excess, at the date of deceased's sale, before he had received anything, or that appellant could demand and recover this excess before deceased had been fully reimbursed, unless deceased had negligently or unnecessarily postponed the time for payment or the collection of the last instalments.

We do not think the claim was barred by the statute of limitations.

The only remaining question in the record is, was the claim within the statute of frauds? The statute of frauds does not apply to an agreement that may be, in the *natural course of events*, performed within a year. Browne on the Statute of Frauds, sec. 280.

We see no insuperable obstacle in the way of this contract, in the natural course of events, being performed within a year, and it was therefore not within the statute of frauds. Nor do we think this kind of a contract is within the statute of frauds. *Reyman* v. *Mosher*, 71 Ind. 596.

Appellee, in the conclusion of his brief, admits that the contract, if there was one, "was probably not within the statute of frauds."

For the error in the court below, in finding that this claim was barred by the statute of limitations, the judgment must be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be, and the same is hereby, in all things reversed, at appellee's costs; and that the same be remanded, with instructions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.